UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK HAZELTINE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FRANCES HICKS, et al.,<br><br>　　　　　Defendants. | Case No. 1:14-cv-00056 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATION REGARDING FIRST AMENDED COMPLAINT<br>[ECF No. 27]<br><br>THIRTY-DAY DEADLINE |

　　　　Plaintiff Rick Hazeltine ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on January 15, 2014. On January 30, 2015, the Court screened the Complaint and determined that it stated a claim of excessive force in violation of the Eighth Amendment against Defendants Ian Young, Benjamin Gamez, Rashaun Casper, Julius Oldan, Porfirio Sanchez Negrete, David Avilia, Rickey Smith, and Charles Ho. Plaintiff was notified that he could proceed on the above claim or file an amended complaint. On February 20, 2015, Plaintiff filed a notice of his willingness to proceed on the above claim. Therefore, on March 3, 2015, the Court issued a Findings and Recommendation that all other claims and defendants be dismissed, and the case proceed on Plaintiff's claim of excessive force against the above-named defendants. Plaintiff did not file objections. Accordingly, on April 23, 2015, the District Court adopted the Findings and Recommendation in full and ordered the matter to

1

proceed on Plaintiff's claim of excessive force. The Court dismissed all other claims, and Defendants Frances Hicks and Aldo Mendez from the action.

On May 21, 2015, Plaintiff moved to amend the complaint. Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within 21 after serving the pleading, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). In this case, Defendants filed answers to the complaint after Plaintiff moved to amend. Therefore, pursuant to Rule 15(a), Plaintiff was granted leave to amend his complaint.

On July 6, 2015, Plaintiff filed a First Amended Complaint. He names Ian Young, Benjamin Gamez, Rashaun Casper, Julius Oldan, Porfirio Sanchez Negrete, David Avilia, Rickey Smith and Charles Ho as Defendants.

A.      **SCREENING REQUIREMENT**

The Court is required to screen Plaintiff's complaint and dismiss the case, in whole or in part, if the Court determines it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121-23 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks

2

omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**B.       SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently detained at Coalinga State Hospital where the events giving rise to this action took place.

Plaintiff alleges the following.  On September 2, 2013, Plaintiff was standing in the hallway with patient Stephen Arnold while staff members Ian Young, Rickey Smith, and Rubin Casanova were searching Arnold's room.  Plaintiff watched as Defendant Smith threw some of Arnold's food, which he had just purchased the previous day, into the trash.  Arnold asked staff why Defendant Smith was throwing away the food, and Smith replied that it had all expired.  Plaintiff told Arnold to retrieve the food and check the expiration dates.  The dates reflected that the food was not expired.  At that time, Defendant Smith told Arnold he could remove the food from the trash if he wanted.  Plaintiff stated that the food had been contaminated.  Patient Arnold then began arguing with staff.  Plaintiff asked what the policy on open food in the rooms was so as not to waste money, and Defendant Young replied, "When I search your room I'll let you know."  Plaintiff told Arnold to stop wasting his time and that Plaintiff would just write it up for him.  Arnold asked staff members which staff member he should write up.  Plaintiff then asked, "Who is in charge?"  Defendant Smith said, "I'm not talking to your attorney (referring to Plaintiff)," and he thumped his chest and told Arnold to "just right [sic] me up and when you need my license number just come and ask."

Later, Arnold brought Plaintiff a piece of paper with Defendant Smith's number on it.  Plaintiff saw that the number was incomplete since there were only four digits, so he had Smith's information looked up.  He learned that there were two Rickey Smiths that were licensed psychiatric technicians, however, one of them was Rickey Donnel Smith.  Plaintiff gave Arnold the information on Rickey Donnel Smith.  Arnold asked Defendant Smith if his middle name was Donnel and Defendant Smith appeared bothered.

The next morning, Plaintiff had just woken up and dressed when Arnold came to his room

3

and told him staff members had forcefully taken the information from him regarding Defendant Smith.  Moments later, Defendants Young, Smith and Gamez arrived at Plaintiff's room and told him to step out so they could search his room.  Plaintiff complied.  Plaintiff asked if this was because he had obtained Smith's information the night before, but there was no response.  As they were searching the room, Defendants dropped several law books to the floor and stepped on them thereby damaging them.  Plaintiff became upset at seeing his property destroyed and started speaking with an elevated voice.  Plaintiff told staff searching his room what "pieces of shit" they all were.  Defendant Young told Plaintiff that he needed to stop threatening legal action.  Plaintiff denied making any threats.  Plaintiff then said, "If I said that I was going to sue your punk ass, that would be a threat, but I didn't say any such thing."  Defendant Young advised Plaintiff that he needed to stop cussing.  Plaintiff stated, "[N]o, I don't, the First Amendment to the Constitution says I can talk any fucking way I want."  At that point, Defendant Young walk toward Plaintiff, so Plaintiff backed up and leaned against the wall.  Plaintiff states he took a non-aggressive posture by leaning against the wall with one leg up, and his arms folded across his chest.  At that point, Defendant Young stepped in front of Plaintiff and commanded him, "You need to calm down."  Plaintiff responded that he wasn't out of control and his stance wasn't aggressive.  Defendant Young replied that Plaintiff's arms folded across his chest was aggressive. Defendant Young then proceeded to grab Plaintiff's arms and forcefully pull them apart.  At that same time, other staff members that had been standing around proceeded to grab him in various ways.  Those involved in grabbing him were Defendants Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho.  They then pulled Plaintiff off the wall and slammed him hard against the opposite wall.  Defendants also twisted his arms and wrists. Defendants told Plaintiff to "stop resisting" and then would pull him off the wall and then as hard as they could, slam him back into the wall.  Plaintiff alleges this was done to make it appear as though he was resisting.  Plaintiff was then punched and elbowed in the back of the head by Defendant Smith so hard that his face slammed into the wall with so much force that he almost blacked out. Then, Defendant Smith put his arm around Plaintiff's neck and squeezed it with so much force he thought it would break.  Plaintiff couldn't breathe.  Plaintiff attempted to say he couldn't breathe but due to the force of Defendant Smith's arm around his neck, nothing came out.  Then, all of the staff

4

slammed him to the floor.  Defendant Negrete placed his knees in Plaintiff's upper back.  Defendant Negrete is a heavy person so again Plaintiff could not breathe.  Plaintiff tried to state he couldn't breathe but his voice would not come out.  Plaintiff was then picked up off the floor and suspended in the air.  His feet were released so he could stand up, but then he heard the words, "stop resisting," and again he was slammed into the walls and doorframes several more times.  Finally, he was taken to the restraint room where a nurse assessed him and noted all of the cuts and scrapes on his head, face, and upper body.  Hospital police then arrived and took photographs of the injuries.  A psychiatrist then arrived and talked to Plaintiff.  He stated Plaintiff didn't appear to be agitated or out of control, so he was released from seclusion.

      Plaintiff states that Defendant Frances Hicks is the Program 4 Director.  Plaintiff states that Defendant Hicks was asked to view the video footage for Patient Rights Advocate Daniel Wagoner.  Defendant Hicks advised Wagoner that upon her view of the footage, it appeared that Plaintiff was waving his arms around in the air.  She further advised Wagoner that just prior to staff taking Plaintiff to the ground, the footage showed Plaintiff came of the wall at staff.  Plaintiff claims this is a lie and Defendant Hicks perjured herself.

      Plaintiff states that Aldo Mendez is the Unit 9 Supervisor.  He is responsible for making the rules and setting policy and procedures.  He gives direction to staff in the unit on how to act or respond in any given situation.  Plaintiff alleges that it is at his lead that Unit 9 has a "lower tolerance" for aggression and other things, and it is this mindset that opened the door to assaults such as this.

      Plaintiff claims the physical abuse he received from Defendants Hicks, Mendez, Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho violated the Eighth, Fourteenth, and First Amendments to the Constitution.  He further claims Defendants Hicks and Mendez set up a mindset to use force in violation of Plaintiff's due process rights under the Fourteenth Amendment to the Constitution.  Finally, Plaintiff claims Defendant Hicks committed perjury in violation of clearly established California law and denied Plaintiff his due process rights under the Fourteenth Amendment.

      As relief, Plaintiff prays for compensatory damages in the amount of $2,000,000.00 against

5

each Defendant. Further, he prays for punitive damages in the amount of $100,000.00 against each Defendant.

## C. DISCUSSION

### 1. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment only protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865 (1989). On the other hand, civil detainees are entitled to Fourteenth Amendment protections. See Seling v. Young, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of confinement under the [civil confinement act] bear some reasonable relation to the purpose for which persons are committed."); Jones v. Blanas, 393 F.3d 918, 933 (9th Cir.2004) ("Civil status means civil status, with all the Fourteenth Amendment rights that accompany it."). A civil detainee is entitled to "more considerate treatment" than his criminally detained counterparts. Jones, 393 F.3d at 932 (quoting Youngberg, 457 U.S. at 321-22).

In the context of pretrial detainees, the Fourteenth Amendment requires that pretrial detainees not be subject to conditions that amount to punishment. Bell, 441 U.S. at 536. "At a bare minimum ... an individual detained under civil process-like an individual accused but not convicted of a crime-cannot be subject to conditions that "amount to punishment." Jones, 393 F.3d at 932 (quoting Bell, 441 U.S. at 536). Thus, "when a SVPA detainee is confined to conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, [the Court] presume[s] that the detainee is being subjected to punishment." Id. (quotations omitted).

A claim of excessive force by a detainee is analyzed under the objective reasonableness standard. See Gibson v. County of Washoe, 290 F.3d 1175, 1197 (9th Cir.2002) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)) (holding use of force is reasonable after careful balancing of the nature and quality of the intrusion on the individual's constitutional interests against the countervailing government interests at stake); see also Andrews v. Neer, 253 F.3d 1052, 1060-61 (8th Cir. 2001) (citing Johnson–El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir.1989)) (applying objective reasonableness standard in context of civil detainees and finding use of force must be necessarily incident to administrative interests in safety, security, and efficiency).

Plaintiff alleges that Defendants Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho physically assaulted him by repeatedly slamming him against a wall and doorframe, and by twisting his arms and wrists.  Plaintiff alleges that Defendant Smith punched and elbowed him in the back of the head and then placed his arm around Plaintiff's neck, cutting off his ability to breathe.  Plaintiff alleges that Defendant Negrete placed his knees in Plaintiff's upper back and drove his weight into Plaintiff preventing him from breathing.  These allegations are sufficient to state a claim against Defendants Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho under the Fourteenth Amendment.

Insofar as Plaintiff is a civil detainee and not a prisoner, he fails to state a claim for relief under the Eighth Amendment.

2.   First Amendment Claim - Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

"[C]ivil detainees retain greater liberty protections than individuals detained under criminal process.... Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted).  "However, as with other First Amendment rights in the inmate context, detainees' rights may be limited or retracted if required to 'maintain [ ] institutional security and preserv[e] internal order and discipline.'"  Pierce, 526 F.3d at 1209 (quoting Bell v. Wolfish, 441 U.S. 520, 549 (1979)).

Plaintiff fails to state a claim for relief under the First Amendment.  Plaintiff does not show

7

he was engaged in protected speech, only that he and Defendants became embroiled in an argument over the treatment of his person and property which resulted in the alleged use of unreasonable force. Further, he does not demonstrate that Defendants acted out of retaliatory motive, or that the injuries he sustained were inflicted as a result of Plaintiff's protected conduct. Plaintiff merely concludes that the physical abuse he sustained by the Defendants for voicing his displeasure of the manner in which they were treating his property violated the First Amendment. Conclusory allegations are insufficient to state a claim for relief.

**D.      CONCLUSION AND RECOMMENDATION**

Plaintiff's complaint states the following cognizable claim: (1) excessive force in violation of the Fourteenth Amendment against Defendants Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho. It does not state any further claims against any other Defendants.

Accordingly, the Court HEREBY RECOMMENDS the following:

1. This action be ORDERED to proceed on the following claim: Excessive force in violation of the Fourteenth Amendment against Defendants Ian Young, Benjamin Gamez, Rashaun Casper, Julius Oldan, Porfirio Sanchez Negrete, David Avilia, Rickey Smith, and Charles Ho; and

2. Any remaining claims be DISMISSED from this action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after date of service of these Findings and Recommendations, the parties may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to objections, if any, shall be filed within fourteen (14) days of the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 17, 2015**                              /s/ Dennis L. Beck
                                                         UNITED STATES MAGISTRATE JUDGE