# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK A. HAZELTINE,<br><br>             Plaintiff,<br><br>    v.<br><br>FRANCES HICKS, et al.,<br><br>             Defendants. | 1:14-cv-00056-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED**<br>**(ECF No. 53.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS** |

**I.    BACKGROUND**

Plaintiff Rick A. Hazeltine ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's First Amended Complaint filed on July 6, 2015, on the following claim: Excessive force in violation of the Fourteenth Amendment against Defendants Ian Young, Benjamin Gamez, Rashaun Casper, Julius Oldan, Porfirio Sanchez Negrete, David Avilia, Rickey Smith, and Charles Ho (collectively "Defendants"). (ECF No. 27.)[1]

The deadlines in this case for conducting discovery and filing pretrial dispositive motions expired on July 25, 2016 and September 23, 2016, respectively. (ECF No. 46.) On

---

[1] On August 21, 2015, the Court issued an order dismissing all remaining claims from this action. (ECF No. 29.)

September 23, 2016, Defendants filed a motion for summary judgment.  Fed. R. Civ. P. 56. (ECF No. 53.)  On October 11, 2016, Plaintiff filed an opposition.[2]  (ECF No. 58.)  The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, the Court recommends that Defendants' motion be granted.

## II.	SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 53 at 59.)

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III. SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[3]

Plaintiff is currently civilly detained at Coalinga State Hospital in Coalinga, California, where the events giving rise to this action took place.

Plaintiff alleges the following. On September 2, 2013, Plaintiff was standing in the hallway with patient Stephen Arnold while staff members Ian Young, Rickey Smith, and Rubin Casanova were searching Arnold's room. Plaintiff watched as Defendant Smith threw some of Arnold's food, which he had just purchased the previous day, into the trash. Arnold asked staff why Defendant Smith was throwing away the food, and Smith replied that it had all expired. Plaintiff told Arnold to retrieve the food and check the expiration dates. The dates reflected that the food was not expired. At that time, Defendant Smith told Arnold he could remove the food from the trash if he wanted. Plaintiff stated that the food had been contaminated. Patient Arnold then began arguing with staff. Plaintiff asked what the policy on open food in the rooms was so as not to waste money, and Defendant Young replied, "When I search your room I'll let you know." (Amended Complaint, ECF No. 27 at 621-22.) Plaintiff told Arnold to stop wasting his time and that Plaintiff would just write it up for him. Arnold asked staff members which staff member he should write up. Plaintiff then asked, "Who is in charge?" (Id. at 6:27.)

---

[3] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

Defendant Smith said, "I'm not talking to your attorney (referring to Plaintiff)," and he thumped his chest and told Arnold to "just right [*sic*] me up and when you need my license number just come and ask." (Id. at 6:28-7:2.)

Later, Arnold brought Plaintiff a piece of paper with Defendant Smith's number on it. Plaintiff saw that the number was incomplete since there were only four digits, so he had Smith's information looked up. He learned that there were two Rickey Smiths that were licensed psychiatric technicians; however, one of them was Rickey Donnel Smith. Plaintiff gave Arnold the information on Rickey Donnel Smith. Arnold asked Defendant Smith if his middle name was Donnel and Defendant Smith appeared bothered.

The next morning, Plaintiff had just woken up and dressed when Arnold came to his room and told him staff members had forcefully taken the information from him regarding Defendant Smith. Moments later, Defendants Young, Smith and Gamez arrived at Plaintiff's room and told him to step out so they could search his room. Plaintiff complied. Plaintiff asked if this was because he had obtained Smith's information the night before, but there was no response. As they were searching the room, Defendants dropped several law books to the floor and stepped on them thereby damaging them. Plaintiff became upset at seeing his property destroyed and started speaking with an elevated voice. Plaintiff told staff searching his room what "pieces of shit" they all were. (Id. at 8:4-5.) Defendant Young told Plaintiff that he needed to stop threatening legal action. Plaintiff denied making any threats. Plaintiff then said, "If I said that I was going to sue your punk ass, that would be a threat, but I didn't say any such thing." (Id. at 8:9-10.) Defendant Young advised Plaintiff that he needed to stop cussing. Plaintiff stated, "[N]o, I don't, the First Amendment to the Constitution says I can talk any fucking way I want." (Id. at 8:11-13.) At that point, Defendant Young walked toward Plaintiff, so Plaintiff backed up and leaned against the wall. Plaintiff states he took a non-aggressive posture by leaning against the wall with one leg up, and his arms folded across his chest. At that point, Defendant Young stepped in front of Plaintiff and commanded him, "You need to calm down." (Id. at 9:4-5.) Plaintiff responded that he wasn't out of control and his stance wasn't aggressive. Defendant Young replied that Plaintiff's arms folded across his chest

4

was aggressive. Defendant Young then proceeded to grab Plaintiff's arms and forcefully pull them apart. At that same time, other staff members that had been standing around proceeded to grab him in various ways. Those involved in grabbing him were Defendants Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho. They then pulled Plaintiff off the wall and slammed him hard against the opposite wall. Defendants also twisted his arms and wrists. Defendants told Plaintiff to "stop resisting" and then would pull him off the wall and then as hard as they could, slam him back into the wall. (Id. at 9:18.) Plaintiff alleges this was done to make it appear as though he was resisting. Plaintiff was then punched and elbowed in the back of the head by Defendant Smith so hard that his face slammed into the wall with so much force that he almost blacked out. Then, Defendant Smith put his arm around Plaintiff's neck and squeezed it with so much force he thought it would break. Plaintiff couldn't breathe. Plaintiff attempted to say he couldn't breathe but due to the force of Defendant Smith's arm around his neck, nothing came out. Then, all of the staff slammed him to the floor. Defendant Negrete placed his knees in Plaintiff's upper back. Defendant Negrete is a heavy person so again Plaintiff could not breathe. Plaintiff tried to state he couldn't breathe but his voice would not come out. Plaintiff was then picked up off the floor and suspended in the air. His feet were released so he could stand up, but then he heard the words "stop resisting" and again he was slammed into the walls and doorframes several more times. (Id. at 10:14-15.) Finally, he was taken to the restraint room where a nurse assessed him and noted all of the cuts and scrapes on his head, face, and upper body. Hospital police then arrived and took photographs of the injuries. A psychiatrist then arrived and talked to Plaintiff. He stated Plaintiff didn't appear to be agitated or out of control, so he was released from seclusion.

Plaintiff states that Frances Hicks [not a defendant] is the Program 4 Director. Plaintiff states that Hicks was asked to view the video footage for Patient Rights Advocate Daniel Wagoner. Hicks advised Wagoner that upon her view of the footage, it appeared that Plaintiff was waving his arms around in the air. She further advised Wagoner that just prior to staff taking Plaintiff to the ground, the footage showed Plaintiff came off the wall at staff. Plaintiff claims this is a lie and Hicks perjured herself.

Plaintiff states that Aldo Mendez [not a defendant] is the Unit 9 Supervisor. He is responsible for making the rules and setting policy and procedures. He gives direction to staff in the unit on how to act or respond in any given situation. Plaintiff alleges that it is because of Mendez's influence that Unit 9 has a "lower tolerance" for aggression and other things, and it is this mindset that opened the door to assaults such as this. (Id. at 11:13-14.)

Plaintiff claims the physical abuse he received from Defendants Mendez, Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith and Ho violated the Eighth, Fourteenth, and First Amendments to the Constitution. He further claims that Hicks and Mendez set up a mindset to use force in violation of Plaintiff's due process rights under the Fourteenth Amendment to the Constitution. Finally, Plaintiff claims Hicks committed perjury in violation of clearly established California law and denied Plaintiff his due process rights under the Fourteenth Amendment.

As relief, Plaintiff prays for monetary damages.

IV.   **FOURTH AND FOURTEENTH AMENDMENTS -- EXCESSIVE FORCE**

**Legal Standard**

It is the Due Process Clause of the Fourteenth Amendment that protects civil detainees from the use of excessive force which amounts to punishment, Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)), and the Fourth Amendment sets the applicable constitutional limitations for considering such claims, Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003) (citing Gibson, 290 F.3d at 1198) (quotation marks omitted).

In resolving claims of excessive force brought by civil detainees, the Fourth Amendment's objective reasonableness standard applies. Lolli, 351 F.3d at 415. The inquiry is whether Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Id. (citing Graham, 490 U.S. at 397) (quotation marks omitted). The nature and quality of the intrusion on Plaintiff's Fourth Amendment interests must be balanced against the countervailing governmental interests at stake. Id. Factors may include the severity of the incident giving rise

to the use of force, whether Plaintiff posed an immediate threat to the safety of Defendants or others, and whether Plaintiff was actively attempting to avoid being subdued or brought under control.  See Gibson, 290 F.3d at 1198 (citation omitted).

## V.    DEFENDANTS' MOTION

Defendants move the Court for summary judgment on the grounds that (1) Defendants did not use excessive force in violation of Plaintiff's Fourteenth Amendment rights; (2) Defendants are entitled to qualified immunity; and (3) there are no disputed material facts to be adjudicated.

Defendants' motion relies on Plaintiff's failure to respond to Defendants' Requests for Admissions.  Defendants represent that each Defendant served Requests for Admission on Plaintiff twice, on February 25, 2016 and June 2, 2016, and Plaintiff failed to respond. Defendants argue that the Requests for Admissions were deemed admitted after Plaintiff failed to respond, foreclosing Plaintiff's causes of action.

Defendants assert that Plaintiff has admitted the following matters:

1. Plaintiff admits that Defendants Avilia, Casper, Gamez, Ho, Negrete, Oldan, Smith, and Young did not violate Plaintiff's civil rights.

2. Plaintiff admits that Defendants Avilia, Casper, Gamez, Ho, Negrete, Oldan, Smith, and Young did not violate Plaintiff's constitutional rights.

3. Plaintiff admits that Defendants Avilia, Casper, Gamez, Ho, Negrete, Oldan, Smith, and Young did not cause Plaintiff to sustain injury arising from the incident on September 2, 2013, as alleged in Plaintiff's complaint.

4. Plaintiff admits that Defendants Avilia, Casper, Gamez, Ho, Negrete, Oldan, Smith, and Young did not cause Plaintiff to sustain damages arising from the incident on September 2, 2013, as alleged in Plaintiff's complaint.

5. Plaintiff admits that Defendants Avilia, Casper, Gamez, Ho, Negrete, Oldan, Smith, and Young did not cause did not inflict cruel and unusual punishment upon Plaintiff as alleged in Plaintiff's complaint.

6.     Plaintiff admits that Defendants Avilia, Casper, Gamez, Ho, Negrete, Oldan, Smith, and Young did not violate Plaintiff's due process rights as alleged in Plaintiff's complaint.

Defendants argue that Plaintiff had ample notice and opportunity to respond to Defendants' Requests for Admissions, from service on February 25, 2016, and re-service on June 2, 2016, to close of discovery on July 25, 2016. Defendants argue that the facts Plaintiff has admitted are fatal to his Eighth Amendment excessive force claim against Defendants and therefore, Defendants are entitled to judgment as a matter of law against Plaintiff.

Defendants' evidence consists of the Declaration of John M. Feser, Jr. (ECF No. 53 at 15-17); Declarations of Service of Discovery Requests to Plaintiff (Exhs. A & B to Feser Decl); and the Requests for Admission served upon Plaintiff (Exhs. C-J to Feser Decl).

## VI. PLAINTIFF'S OPPOSITION

In opposition, Plaintiff asserts that he could not fully answer Defendants' questions during discovery because he was unable to obtain video evidence of the assault at issue. Plaintiff maintains that the video will absolutely disprove Defendants' case.

Plaintiff submits excerpts from his deposition testimony concerning the alleged assault at issue:

A.    . . . He came in front of me and said something like, you know, "You need to calm down" or something like that, and I said something – "I'm not upset" or something, or "You need to stop cussing," and I cussed and said, "No, I don't," you know. And I said, "I'm not standing aggressive or whatever, my arms are folder across my chest," and he said, "Your arms folded across your chest is aggressive to me," pulled my arms apart, and then everybody just –

Q.    Okay. Now, did Mr. Young – he pulled your arms apart, correct?

A.    Uh-huh.

Q.    And – yes?

A.    Yes. I'm sorry. Yes.

| | | |
|---|---|---|
| Q. | | And what else did he do?  Do you recall what he specifically did, forgetting everybody else? |
| A. | | No.  I mean, I had eight people choking me, punching me, slamming me into the wall.  I didn't have time to look what every specific person was doing.  Some were twisting my legs; some were twisting my arms.  I do remember Pete, Porfirio, on my left leg, and the reason I know that is because when I was on the wall, I was looking this way, and he was kind of squatted down.  They were on my arms, my legs, you know, and then Pete was the first one to say, "Stop resisting," and then . . . |

(Exh. B to ECF No. 58.)

**VII.   DISCUSSION**

Under Federal Rule of Civil Procedure 36, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).  "The effect of the admission is such that '[a]ny matter admitted under this [Rule 36] is conclusively established' unless the court grants a motion to waive or amend." Fed. R. Civ. P 36(b); Tillamook Country Smoker, Inc.v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102, 1111-12 (9th Cir. 2006).  Upon a motion, the Court may permit an admission to be withdrawn or amended if (1) "it would promote the presentation of the merits of the action" and (2) "if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b).

"This strict rule deeming untimely responses admitted is necessary, because '[a]n important purpose of the rule is to reduce the cost of litigation . . . by narrowing the scope of disputed issues . . . facilitating the succinct presentation of cases to the trier of fact . . . and eliminating the necessity of proving undisputed facts.'"  Broadcast Music v. Hub at Cobb's Mill, 2015 WL 1525936, at *4 (D. Conn. Apr. 2, 2015) (quoting Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D. Conn. 1988)).  Unanswered admissions, or untimely or otherwise deficient responses to admissions, may be relied on as the basis for granting summary judgment.  Conlon v. United States, 474 F.3d 616, 624 (9th Cir. 2007).  To survive summary judgment, a party "ordinarily must furnish affidavits containing admissible evidence tending to show the

///

existence of a genuine dispute of material fact." Pelletier v. Fed. Home Loan Bank of S.F., 968 F.2d 865, 872 (9th Cir. 1992).

Plaintiff asserts that he did not respond to the requests for admission because he was unable to obtain video evidence of the assault at issue in this case. Plaintiff maintains that without the video, which he believes "will absolutely disprove Defendants' case," he could not fully answer Defendants' questions during discovery. (ECF No. 58 at 2:7-8.) Plaintiff has not provided any responses to the requests for admission, nor filed a motion seeking to withdraw his admissions under Rule 36(b), nor sought leave to file late responses. Plaintiff failed to make any response or motion of any kind with respect the requests for admission.

As discussed above, under Rule 36(b)'s two–part test, the Court may permit an admission to be withdrawn or amended. "'The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.'" Conlon, 474 F.3d at 622 (quoting Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995). "[I]t is not improper to request admissions regarding 'ultimate facts.'" Bezi v. Camacho, 2016 WL 4870469, at *5 (C.D. Cal. Aug. 18, 2016) (quoting City of Rome v. United States, 450 F.Supp. 378, 383 (D.D.C. 1978); see also Doty v. City of Santa Clara, 2015 WL 9027727, at *5 (C.D. Cal. Dec. 16, 2015)). However, when the admissions go to the ultimate questions at issue in the case, the Court must carefully scrutinize the requests at issue and the resulting deemed admissions. (See Whitsett v. City of Tracy, 2014 WL 2091363, at *3 (E.D. Cal. May 19, 2014) (because the admissions went to the ultimate questions at issue in the case, the court scrutinized the questions and the resulting deemed admissions more closely than in "the typical scenario in which requests for admission are propounded as a vehicle for formulating a discovery plan"); Jefferson v. Perez, 2012 WL 671917, at *1 (E.D. Cal. Feb. 29, 2012) (explaining that requests for admission should not be used to establish "facts which are obviously in dispute" or to "'demand that the other party admit the truth of a legal conclusion,' even if the conclusion is 'attached to operative facts.'" (citations omitted)). Here, all six of Defendants' requests at issue concern ultimate issues to be decided in this case, including facts which are obviously in dispute. For example, they include admissions that Defendants (1) did

not violate Plaintiff's civil rights, (2) did not violate Plaintiff's constitutional rights, (3) did not cause Plaintiff to sustain injury arising from the incident on September 2, 2013, as alleged in Plaintiff's complaint, (4) did not cause Plaintiff to sustain damages arising from the incident on September 2, 2013, as alleged in Plaintiff's complaint, (5) did not inflict cruel and unusual punishment upon Plaintiff as alleged in Plaintiff's complaint; and (6) did not violate Plaintiff's due process rights as alleged in Plaintiff's complaint.  To deem these admissions admitted would completely eliminate any presentation of the merits in the case, resulting in the Court's recommendation that Defendants' motion for summary judgment be granted.  See Hadley, 45 F.3d at 1348; F.C. ex rel. v. County of Los Angeles, 2010 WL 5157339 (C.D. Cal. Dec. 13, 2010).  Thus, the first half of the test in Rule 36(b) has been satisfied.

As to the second half of the test, the Court finds that Defendants would be prejudiced if Plaintiff were allowed to withdraw his admissions at this late date. "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." Conlon, 474 F.3d at 622 (quoting Hadley, 45 F.3d at 1348.)  Here, Defendants have relied on the deemed admissions for more than four months and have based their motion for summary judgment on the admissions. During that time, Plaintiff gave no indication that he intended to withdraw the admissions.  Accordingly, the Court finds that Defendants would be prejudiced if Plaintiff were allowed to withdraw his admissions.  See Conlon, 474 F.3d at 624; Am. Gen. Life & Acc. Ins. Co. v. Findley, 2013 WL 1120662 at *4-5 (C.D. Cal. Mar. 15, 2013) (concluding that the plaintiff would be prejudiced if the defendant were permitted to withdraw the admissions where the plaintiff relied on the deemed admissions for at least four months, during the discovery period and in filing a motion for summary judgment, and there was no indication throughout that period that the defendant intended to seek permission to withdraw the admissions).

Even if Plaintiff had filed a motion to withdraw the admissions and even if he could satisfy both parts of the test under Rule 36(b), the Court would exercise its discretion to deny such a motion. Bezi, 2016 WL 4870469, at *5; (citing see Conlon, 474 F.3d at 624). "Rule 36(b) is permissive," not mandatory, with respect to the withdrawal of admissions. Conlon, 474 F.3d at 624. In determining whether to exercise its discretion when the moving party has met the two prongs of Rule 36(b), the court may consider other factors, including whether the party can show good cause for failing to respond to the admissions and for failing to seek their withdrawal in a timely manner. Bezi, 2016 WL 4870469, at *5 (citing Am. Gen. Life & Acc. Ins. Co., 2013 WL 1120662, at *5; see also Conlon, 474 F.3d at 625).

Here, Plaintiff has not shown good cause for his failure to respond to Defendants' requests for admission. Nor has he provided any evidence that he ever notified Defendants that the requests were deficient or improper, or requested an extension of time to respond to the requests for admission. Because Defendants served the requests for admission twice, on February 25, 2016 and June 6, 2016, Plaintiff had more than four months to timely respond to the requests for admission. The Court notes that Plaintiff has a history of failing to respond to documents, effectively abandoning other cases he filed pro se at this Court. Hazeltine v. Tuolomne County, 1:04-cv-06712-LJO-JLT-PC (Plaintiff failed to respond to the Court's screening order, order to show cause, and findings and recommendations, resulting in dismissal of the case for failure to prosecute); Hazeltine v. Montoya, 1:08-cv-01935-LJO-GBC-PC (Plaintiff failed to respond to defendants' motion for summary judgment, resulting in entry of judgment against Plaintiff).

A matter admitted under Rule 36(b) is "conclusively established." Fed. R. Civ. P. 6(b). Once a matter has been deemed admitted under Rule 36, the court may not consider evidence that is inconsistent with the admissions. See 999 v. C.I.T. Corp., 776 F.2d 866, 869-70 (9th Cir. 1985); Cook v. Allstate Ins. Co., 337 F.Supp.2d 1206, 1210 (C.D. Cal. 2004). Moreover, "unanswered requests for admissions may be relied on as the basis for granting summary judgment." Conlon, 474 F.3d at 621. Although "using deemed admissions as the only basis in support of a defense motion for summary judgment is not the preferred method of addressing

such an action," Jefferson v. Weaver, 2012 WL 1899205, at *5 (E.D. Cal. May 23, 2012), affirmed by 536 Fed.Appx. 707 (9th Cir. 2013), based on the foregoing, the Court concludes that it is appropriate in this instance. Bezi, 2016 WL 4870469, at *7 (quotation marks omitted). Accordingly, the Court deems the requests for admission admitted, and finds that Defendants are entitled to summary judgment.

## VIII. QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted); see also Stanton v. Sims, 134 S. Ct. 3, 4-5 (2013) (per curiam); Krainski v. Nev. ex. rel. Bd. of Regents, 616 F.3d 963, 968 (9th Cir. 2010); Richardson v. McKnight, 521 U.S. 399, 407-08 (1997); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was 'clearly established' as of the date of the involved events 'in light of the specific context of the case.'" Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009). Although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. See Lolli, 351 F.3d at 421; Wilkins v. City of Oakland, 350 F.3d 949, 955-56 (9th Cir. 2003); Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Martinez v. Stanford, 323 F.3d 1178, 1183-85 (9th Cir. 2003).

Defendants argue that based on Plaintiff's admissions, they are entitled to qualified immunity for their alleged conduct in this case. As discussed above, according to Plaintiff's admissions, Defendants did not violate Plaintiff's constitutional rights. Therefore, the issue of qualified immunity shall not be considered.

///

///

## IX. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, **THE COURT HEREBY RECOMMENDS** that:

1. Defendants' motion for summary judgment, filed on September 23, 2016, be GRANTED;
2. Summary judgment be GRANTED in favor of Defendants Young, Gamez, Casper, Oldan, Negrete, Avilia, Smith, and Ho; and
3. The Clerk be directed to enter judgment in favor of Defendants and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 21, 2016**                    **/s/ Gary S. Austin**
                                                 UNITED STATES MAGISTRATE JUDGE